**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, PLAINTIFF, | ) | CASE NO. 1:17-cr-422 |
| | ) | JUDGE SARA LIOI |
| vs. | ) | MEMORANDUM OPINION |
| TREMAINE JACKSON, DEFENDANT. | ) | |

Before the Court is the *pro se* motion of defendant Tremaine Jackson ("Jackson") to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (Doc. No. 76; *see* Doc. No. 77 (Memorandum in Support).) Plaintiff United States of America (the "government") opposes the motion (Doc. No. 79 (Response)), and Jackson has replied. (Doc. No. 80 (Reply); Doc. No. 82 (Supplemental Reply).) For the reasons that follow, Jackson's motion is DENIED as time-barred and, alternatively, the motion is DENIED on the merits.

## I. BACKGROUND

On October 18, 2017, a federal grand jury charged Jackson and a second individual in a two-count indictment. (Doc. No. 1 (Indictment); Doc. No. 20 (Superseding Indictment).) Specifically as to Jackson, he was charged in Count One with being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(n). (Doc. No. 20, at 1.[1]) On February 1,

[1] All page number references herein are to the consecutive page numbers applied to each individual document by the Court's electronic filing system.

2018, Jackson entered a counseled guilty plea to Count One without a plea agreement. (Minutes of Proceedings [non-document], 2/1/2018; Doc. No. 38 (Transcript of the Guilty Plea Hearing).)

The Court sentenced Jackson on June 6, 2018 to a mid-range guidelines sentence of 52 months of imprisonment.[2] (Doc. No. 32 (Judgment); Minutes of Proceedings [non-document], 6/6/2018.) At the time of sentencing, the Court observed that Jackson was currently serving a state sentence for drug and evidence tampering charges and that he had four additional pending state cases. Only one of the four pending state cases involved conduct that was related to the federal felon-in-possession charge. (Doc. No. 40, at 13–14.) Defense counsel advocated for a low-end sentence and for Jackson's federal sentence to run concurrent to any and all state sentences. (*Id*. at 12–13.) Nevertheless, the Court determined that the federal sentence would run consecutive to the undischarged state court sentence that Jackson was then serving, as well as to any state court sentence that might be entered in the pending cases. (*Id*. at 15–19.) The Court observed that such treatment was necessary, given Jackson's continued unwillingness to refrain from possessing weapons while under a disability and was further necessary to protect the public. (*Id*. at 18.) Defense counsel also requested "jail time credit" for time Jackson had spent in custody prior to sentencing. (*Id*. at 22.) Noting that Jackson had been in both federal and state custody due to his multiple pending charges, the Court deferred to the Bureau of Prisons ("BOP") to calculate time-served credit for his federal sentence. (*Id*. at 23.)

Jackson took a direct appeal from the Court's judgment. On March 12, 2019, the Sixth Circuit entered its decision vacating Jackson's sentence. (Doc. No. 49 (Opinion), at 1.) In so ruling,

---

[2] At sentencing, the Court found that Jackson was a criminal history category VI, which, after applicable adjustments, resulted in a recommended range of 46 to 57 months imprisonment. (Doc. No. 40 (Transcript of Sentencing Hearing), at 6.)

the Sixth Circuit found that the Court had deviated from U.S.S.G. § 5G1.3(c)'s guidance that a federal sentence should run concurrent to any state sentence involving relevant conduct without specifically discussing the sentencing guideline on the record. The matter was remanded for the limited purpose of permitting the Court to discuss the relevant guideline in relation to its sentence. (*Id.*)

Jackson was appointed new counsel, and the Court re-sentenced Jackson in a hearing that was conducted on September 4, 2019. (Minutes of Proceedings [non-document], 9/4/2019; Doc. No. 62 (Amended Judgment).) At the re-sentencing hearing, newly appointed defense counsel advanced arguments for concurrent sentences and raised the issue of potential time-served credit. (Doc. No. 67 (Transcript of Re-Sentencing Hearing), at 13–18; *see generally* Doc. No. 56 (Sentencing Memorandum Opinion).) At the conclusion of the hearing, the Court imposed the same mid-range guidelines sentence of 52 months imprisonment. (Doc. No. 62, at 2.) The Court further ruled that this federal sentence was to be served consecutive to Jackson's undischarged state court cases involving unrelated conduct but "concurrent to any state court sentence imposed relative to" the state case involving conduct related to the present weapons charge. (*Id.*) As it did during the original sentencing hearing, the Court advised Jackson that the BOP would calculate the appropriate time-served credit in this case. (Doc. No. 67, at 37.)

Jackson took a direct appeal from the Court's Amended Judgment. (Doc. No. 63 (Notice of Appeal).)[3] On June 19, 2020, the Sixth Circuit entered a decision denying Jackson's appeal and affirming this Court's Amended Judgment. (Doc. No. 72 (Opinion).) In his direct appeal, Jackson

[3] The government erroneously represented that no appeal was taken from the Amended Judgment. (Doc. No. 79, at 6.)

acknowledged that U.S.S.G. § 5G1.3(c) was no longer applicable but argued that running his federal sentence consecutive to all but one of his state sentences was substantively unreasonable under U.S.S.G. § 5G1.3(d). (*Id*. at 2.) The Sixth Circuit disagreed, noting that the decision to run a sentence "consecutively to, rather than concurrently with, an undischarged sentence is discretionary[,]" and finding no abuse of discretion. (*Id*. (citing, among authority, *United States v. Berry*, 565 F.3d 332, 342 (6th Cir. 2009)).)

On May 20, 2022, Jackson filed the present § 2255 motion. In Ground One, he alleges that defense counsel provided ineffective assistance by failing to "effectively calculate [his] 'time served' jail credits with the AUSA." (Doc. No. 76, at 2.) In Ground Two, Jackson charges that "there is a discrepancy in his judgment of conviction between his federal case and state cases, as to whether or not they are [to run] concurrently or consecutively, and also which cases apply and earn concurrent jail credits together." (*Id*. at 3.) The government argues that Jackson's motion is untimely because it was filed more than one year after his sentence was final and, in any event, would still fail on the merits.

## II. EVIDENTIARY HEARING

A court should hold an evidentiary hearing on a § 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief[.]" 28 U.S.C. § 2255(b). Thus, "no hearing is required if the petitioner's allegations 'cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (quoting *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995)); *see also Napier v. United States*, No. 93-5412, 1993 WL 406795, at *2 (6th Cir. Oct. 8, 1993) ("To be entitled to a hearing, the prisoner

must set forth detailed factual allegations which, if true, would entitle him to relief under § 2255." (citing, among authorities, *Machibroda v. United States*, 368 U.S. 487, 496, 82 S. Ct. 510, 7 L. Ed. 2d 473 (1962))); *cf. Valentine v. United States*, 488 F.3d 325, 334 (6th Cir. 2007) (finding that the burden is met where the petitioner "offers more than a mere assertion . . . he presents a factual narrative of the events that is neither contradicted by the record nor 'inherently incredible'").

The Court finds that an evidentiary hearing is not warranted in the present case. The undisputed facts in the record demonstrate that Jackson's § 2255 motion—filed more than one year after his amended sentence became final—is time-barred under the governing statute. Looking past the tardy filing to the merits, the Court further finds that Jackson has failed to identify facts that, if true, would entitle him to relief under § 2255. Moreover, many of the arguments offered by Jackson in support of the present motion are either contradicted by the record, non-cognizable on a § 2255 motion, or are adverted to in a perfunctory and conclusory manner, preventing further review by this Court.

## III. ALL OR PART OF JACKSON'S § 2255 MOTION IS TIME-BARRED

The Anti-Terrorism and Effective Death Penalty Act (ADEPA) "provides a one-year statute of limitations for filing a federal habeas petition." *Cleveland v. Bradshaw*, 693 F.3d 626, 631 (6th Cir. 2012). Specifically, a prisoner must file his § 2255 motion within one year of the latest of:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made

retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

Here, the Amended Judgment was entered on September 4, 2019 and was affirmed by the Sixth Circuit on June 19, 2020. Because Jackson did not seek a writ of certiorari with the Supreme Court, his judgment became final on September 19, 2020, which was 90 days after the Sixth Circuit entered judgment. *See Clay v. United States*, 537 U.S. 522, 525, 527, 123 S. Ct. 1072, 155 L. Ed. 2d 88 (2003). Jackson was required to file his § 2255 motion by September 20, 2021.[4] Instead, he filed the instant motion on May 20, 2022, 8 months after the limitations period had expired. Accordingly, the motion is not timely under § 2255(f)(1).

Jackson does not identify an impediment created by the government, or a new right that was originally recognized by the Supreme Court and made retroactively applicable to cases on collateral review, to justify the delay in filing the present § 2255 motion. *See* § 2255(f)(2), (3). Instead, he insists that extenuating circumstances require the Court to reach the merits of his motion. He notes that he was in state custody until April 2022, when he finished his state sentence and was transferred to the BOP to begin serving his federal sentence. According to Jackson, it was not until he arrived at his current federal facility that he was made aware—through the presentation of a "Judgment of  Commitment"—that the BOP's calculation of jail credits did not include time

[4] The deadline actually fell on September 19, 2021, which was a Sunday. Accordingly, Jackson would have had until the next business day—September 20, 2021—to file the motion. *See* Fed. R. Civ. P. 6(a)(1)(C).

served in state custody prior to sentencing in federal court.[5] (Doc. No. 80, at 1–2.)

Section 2255(f)(4) permits the filing of a motion to vacate within one year of "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." To the extent that Ground Two challenges this Court's decision to run his federal sentence consecutive to all but one of his state convictions, § 2255(f)(4) is inapplicable. The Court announced its amended sentence, including its position regarding the sentences in the state cases, at the re-sentencing hearing on September 4, 2019. The Amended Judgment, issued the same day, reflected this treatment. (Doc. No. 62, at 2.) Accordingly, Jackson has pointed to no newly discovered facts that he only recently discovered that gave rise to his claim regarding this Court's treatment of his federal sentence relative to his state sentences. *See also Webb v. United States*, 679 F. App'x 443, 448 (6th Cir. 2017) (motion to vacate was not timely under § 2255(b)(4) where the only newly discovered facts were "extraneous or irrelevant to the pertinent facts supporting" the defendant's claim). Because the facts forming the basis for his claim regarding consecutive sentences were known to Jackson at the time the Amended Judgment was entered, the statute of limitations on this claim expired eight months before he filed the present motion.

Jackson also argues that he is entitled to equitable tolling due to circumstances surrounding the COVID-19 pandemic. Because § 2255(f) is not a jurisdictional bar, it is subject to equitable tolling under extraordinary circumstances. *Reed v. United States*, 13 F. App'x 311, 312 (6th Cir. 2001). To warrant tolling under traditional equitable principles, a petitioner must show "'(1) that

[5] The Court does not understand Jackson to be making the argument that the one-year limitations period did not begin until he was placed in federal custody. Nevertheless, if he is advancing such an argument, it would fail. "A prisoner is in custody for purposes of § 2255 when he is incarcerated in federal *or state prison*, provided a federal court has sentenced him." *McKinnie v. United States*, No. 2:14-cr-20171, 2022 WL 17327507, at *3 (W.D. Tenn. Nov. 29, 2022) (citing *Ospina v. United States*, 386 F.3d 750, 753 (6th Cir. 2004); *Ward v. Knoblock*, 738 F.2d 134, 138 (6th Cir. 1984) (emphasis added)).

he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649, 130 S. Ct. 2549, 177 L. Ed. 2d 130 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S. Ct. 1807, 161 L. Ed. 2d 669 (2005)); *see Jefferson v. United States*, 730 F.3d 537, 549 (6th Cir. 2013) (quoting *Holland*, 560 U.S. at 649). The Sixth Circuit has repeatedly made clear its view that "equitable tolling relief should be granted only sparingly." *See Amini v. Oberlin College*, 259 F.3d 493, 500 (6th Cir. 2001) (citations omitted). Such motions are evaluated on "a case-by-case basis, with the petitioner having the 'ultimate burden of persuading the court that he or she is entitled to equitable tolling.'" *Keeling v. Warden*, 673 F.3d 452, 462 (6th Cir. 2012) (quoting *Ata v. Scutt*, 662 F.3d 736, 741 (6th Cir. 2011)); *see Johnson v. United States*, 457 F. App'x 462, 469 (6th Cir. 2012) (similar).

Jackson has failed to demonstrate that the COVID-19 pandemic entitles him to equitable tolling. Courts have concluded that the COVID-19 pandemic "could—in certain circumstances—conceivably warrant equitable tolling" for § 2255 motions. *United States v. Haro*, No. 8:18-cr-66, 2020 WL 5653520, at *4 (D. Neb. Sept. 23, 2020). These "certain circumstances" involve defendants who had been pursuing their rights diligently and would have timely filed if not for external obstacles caused by COVID-19. For example, the District of Nevada granted a defendant's COVID-19-based request for equitable tolling because the pandemic had, among other things, halted ongoing investigations and prevented counsel from obtaining necessary court records. *See Dunn v. Baca*, No. 3:19-cv-702, 2020 WL 2525772, at *2 (D. Nev. May 18, 2020). In granting relief, the court wrote that it had "little to no doubt that [the defendant and his counsel were] pursuing [the defendant's] rights diligently." *Id.*; *see, e.g., Fitzgerald v. Shinn*, No. 19-cv-

5219, 2020 WL 3414700, at *2 (D. Ariz. June 22, 2020) (Petitioner was entitled to equitable tolling where he demonstrated, through declarations from members of defense team, his efforts to investigate and pursue his rights under § 2255).

In other circumstances, courts have rejected requests for equitable tolling premised upon pandemic-related lockdowns and loss of law library access where there was no evidence the prisoner diligently pursued his right to file a § 2255 motion prior to the lockdown.[6] *See Mims v. United States*, No. 4:20-cv-1538, 2021 WL 409954, at *3 (E.D. Mo. Feb. 5, 2021) (a claim of inability to access a law library due to a COVID-19 lockdown was insufficient to warrant application of equitable tolling where the movant failed to establish he was pursuing his rights diligently beforehand); *United States v. Thomas*, No. 18-cr-135, 2020 WL 7229705, at *2–3 (E.D. La. Dec. 8, 2020) (similar); *United States v. Barnes*, No. 18-cr-154, 2020 WL 4550389, at *2 (N.D.

[6] Some courts have even ruled that, while the COVID-19 pandemic may have made it more difficult to litigate from prison, it has not made it impossible to do so. *See United States v. Lara*, No. 6:18-cr-95, 2021 WL 4087613, at *2 (S.D. Tex. Sept. 8, 2021) (collecting cases including *United States v. Caldwell*, No. 2:17-cr-774, 2021 WL 2849997, at *2 (S.D. Tex. June 1, 2020) ("Even if prison law libraries are closed due to the current COVID-19 pandemic, prison mail systems are not. The Bureau of Prison's COVID-19 Modified Operations Plan has not prevented inmates from filing motions and responses in other cases"))). Indeed, this Court and other federal courts around the country continued to receive *pro se* prisoner motions and habeas actions throughout the pandemic. Given that Jackson was already aware of the basis for his claim regarding the consecutive nature of his federal sentence before the pandemic began, Jackson has failed to demonstrate why he could not file a § 2255 motion raising this claim and then seek leave to supplement with law and analysis when he had better access to legal materials and research.

Okla. Aug. 6, 2020) ("Even assuming that a lockdown due to the COVID-19 pandemic delayed defendant's ability to file his motion, it does not explain the more than one-year delay. COVID-19 measures have been in effect since March 2020, and defendant could have filed his motion long before March 2020.")

"The bottom line is that the COVID-19 pandemic does not automatically warrant equitable tolling for a petitioner who seeks it on that basis. The petitioner must establish that he was pursuing his rights diligently *and* that the COVID-19 pandemic specifically prevented him from filing his motion." *United States v. Henry*, No. 2:17-cr-180, 2020 WL 7332657, at *4 (W.D. Pa. Dec. 14, 2020) (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S. Ct. 1807, 161 L. Ed. 2d 669 (2005) (emphasis in original))). Here, Jackson simply asserts that, as a result of the pandemic, he was denied access to the law library in his state facility, "making it impossible for him to do legal research." (Doc. No. 80, at 2.) "Courts have consistently held that general allegations of placement in segregation and lack of access to legal materials are not exceptional circumstances warranting equitable tolling, especially where a petitioner does not sufficiently explain why the circumstances he describes prevented him from timely filing a habeas petition[.]" *Andrews v. United States*, No. 17-1693, 2017 WL 6376401, at *2 (6th Cir. Dec. 12, 2017). Jackson's vague and generalized contentions do not begin to demonstrate that the impact of the COVID-19 pandemic interfered with his ability to file a timely § 2255 motion. *See, e.g.*, *Chapman-Sexton v. United States*, No. 2:16-cr-141, 2021 WL 292027, at *3 (S.D. Ohio Jan. 28, 2021) ("The record does not indicate that impact of any extraordinary circumstances imposed by COVID-19 prevented Petitioner from timely filing this federal habeas corpus petition within the one-year period[.]"); *see also United States v. Marshall*, No. 5:18-cr-122, 2021 WL 3854469, at *2 (E.D. Ky. Aug. 5, 2021) (When

evaluating equitable tolling arguments related to COVID-19, a petitioner "must demonstrate fact-specific circumstances related to the pandemic that hindered his ability to timely file a § 2255 motion.")

## IV. JACKSON'S MOTION ALSO FAILS ON THE MERITS

Even if the Court were to reach the merits of Jackson's claim relative to this Court's decision to run its amended sentence consecutive to various state sentences, it would fail for two reasons. First, this issue was raised and denied on direct appeal. "A § 2255 may not be used to relitigate an issue that was raised on appeal absent highly exceptional circumstances" that are not present here. *See DuPont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996) (quotation marks and citations omitted). Second, to the extent Jackson complains that there is a "discrepancy" between the state court's treatment of its sentences relative to this Court's, a state court's treatment of its sentence has no bearing on how a federal sentence is to be carried out. *See Ruff v. Butler*, No. 16-5565, 2017 WL 5135545, at *2 (6th Cir. June 16, 2017) ("[N]either the federal courts nor the [BOP] are bound in any way by the state court's decision that the state and federal sentences run concurrently." (internal quotations marks and citation omitted)).

Jackson's arguments relative to the calculation of time-served credit fare no better on a merits review. As previously noted, Ground One alleges that Jackson's trial counsel was ineffective for failing to work with the government to calculate his entitlement to time-served credit. (Doc. No. 76, at 2.) Yet, the fact remains that the calculation and application of jail time credits did not rest with his counsel, the government, or even the Court. The determination of whether a defendant is eligible for credit for time served in detention prior to sentencing rests exclusively with the BOP. *See United States v. Wilson*, 503 U.S. 329, 335, 112 S. Ct. 1351, 117 L.

Ed. 2d 593 (1992); *United States v. Crozier*, 259 F.3d 503, 520 (6th Cir. 2001) (citations omitted); *United States v. Singh*, 52 F. App'x 711, 712 (6th Cir. 2002) ("A district court may review the BOP's calculation, but may not compute sentencing credit in the first instance, for it is the Attorney General, not the court, who has authority to calculate sentencing credits for time served before sentencing" (citations omitted)). Counsel cannot be considered ineffective for failing to do what he was not required, nor permitted, to do. *See, e.g.*, *Hinton v. United States*, No. 1:16-cr-69, 2021 WL 517843, at *4 (E.D. Tenn. Feb. 11, 2021) (denying defendant's motion to vacate on the ground that trial counsel was ineffective for failing to request jail time credit for time spent in state custody "because the power to award credit for time served lies solely with the Attorney General . . . and the [BOP]" (citations omitted)).

Furthermore, Jackson's attorneys *did* raise the issue of time-served credit at the initial sentencing hearing and again on remand. In both instances, the Court advised Jackson and his counsel that the BOP would calculate time-served credit. (Doc. No. 40, at 23–24; Doc. No. 67, at 37.) That the BOP did not agree with counsel's position on time-served credit does not "imply that counsel's performance fell below constitutional standards of reasonableness."[7] *See, e.g., Dixon v. United States*, No. 1:12-cr-69, 2014 WL 3784493, at *4 (N.D. Ohio July 31, 2014) (counsel was not ineffective merely because the BOP did not accept the district court's recommendation, upon counsel's request, that defendant receive credit for time served in state custody).

Of course, Jackson is not necessarily without recourse with respect to his complaints regarding time-served credit. If, after he has exhausted his administrative remedies and still

[7] Because the Court considered Ground One and part of Ground Two relating to credit for time served on the merits, it need not determine whether these grounds were timely under § 2255(f)(4).

believes that his sentence was improperly calculated, Jackson may return to the courts via a habeas petition under 28 U.S.C. § 2241, and seek relief. *See Hacker v. Fed. Bureau of Prisons*, 450 F. Supp. 2d 705, 709 (E.D. Michigan 2006) ("[S]ection 2241 is the appropriate vehicle for a federal prisoner to challenge the manner in which his sentence is executed[.]" (citing *United States v. Jalili*, 925 F.2d 889, 893 (6th Cir. 1991))). He may not, however, pursue these claims in the present § 2255 motion. Both grounds for relief fail on the merits.

## V. CONCLUSION

For the foregoing reasons, Jackson's motion to vacate, set aside, or correct his sentence is denied. Further, for all of the same reasons, the Court finds that "reasonable jurists" would not debate the Court's denial of Jackson's motion to vacate. *See Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000). Accordingly, the Court certifies that an appeal from this decision could not be taken in good faith, and that there is no basis upon which to issue a certificate of appealability. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

**IT IS SO ORDERED**.

Dated: July 5, 2023

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT COURT**
**CHIEF JUDGE**